# CASES

IN THE

# SUPREME JUDICIAL COURT,

OF THE

# STATE OF MAINE.

---

JABEZ C. WOODMAN, JR. *versus* JOHN W. DANA, *Adm'r.*

An expert in handwriting, having testified that, several years since, he care-
fully examined, and now has a recollection of three signatures purporting
to be the signatures of S., and acknowledged by him to be genuine; that
he never saw S. write, and should not feel able to testify to S.'s signature
without a comparison with other writings; may, after examining another
signature presented purporting to be the signature of S., give his opinion
whether or not the signature in question is in the same handwriting as the
three acknowledged to be genuine.

No witness, except an expert, is competent to give an opinion simply by com-
parison of hands by juxtaposition, and this is done by the production of
the standard in open Court.

Non-experts can only give opinions in cases where they have previous ac-
quaintance or knowledge of the handwriting by which the genuineness of
the controverted specimen is to be tested. And, in this case, the standard
need not be present.

An expert need have no previous acquaintance or knowledge of his standard
to authorize him to express an opinion by comparison.

A non-expert cannot express an opinion without such previous acquaintance
or knowledge.

Where, in the trial of an action on a promissory note, the signature of the
maker is denied, and the presiding Judge refuses to permit an expert, in
answer to a question put by the plaintiff, to give his opinion whether or not
the signature in question is in the same handwriting as three others acknowl-
edged to be genuine, and which the witness had carefully examined, a new
trial will be granted, although the witness, afterwards, in reply to a ques-
tion by the plaintiff, testified that the signature in controversy was the

handwriting of a person other than him whose signature it purports to be; for the plaintiff may have been aggrieved by such refusal.

ON EXCEPTIONS from *Nisi Prius*, DAVIS, J., presiding. The facts sufficiently appear in the opinion of the Court.

*Jabez C. Woodman, pro se.*

*Shepley & Dana,* for defendant.

The opinion of the Court was drawn by

RICE, J.—This is an action to recover of the defendant, as administrator, the contents of several notes of hand, amounting in all to about four thousand dollars, on the ground that said notes were indorsed by the defendant's intestate, Greely Sturdivant. The defence is, that said notes were not indorsed by said intestate nor by his authority.

The plaintiff claims to charge the defendant, *first,* on the ground that said notes were indorsed by his intestate, in his own handwriting; or, *second,* if not so indorsed, that said notes were indorsed in the name of said intestate by some person thereto duly authorized; or, failing in these positions to hold the defendant, on the ground that his intestate had so conducted himself in relation to the matter as to be estopped to deny that he had indorsed the notes in suit.

In the first instance, testimony was introduced by the plaintiff, tending to show that the indorsements on the notes in suit were in the handwriting of the intestate, Greely Sturdivant; and testimony was also introduced by the defendant, tending to disprove that fact.

The case comes before us on exceptions, by the plaintiff, to the exclusion of certain testimony offered by him, tending to prove, as he affirms, that said notes were indorsed by said Greely Sturdivant, the intestate.

It appeared in evidence that the Bank of Cumberland held three promissory notes, in the early part of the year 1850, purporting to have been signed by G. M. Sturdivant and indorsed by Greely Sturdivant. Samuel Small, jr., who was the cashier of the Bank of Cumberland, and also an

Woodman *v.* Dana.

expert in matters of handwriting, testified that he, in company with another person, presented the notes held by the bank to Greely Sturdivant and asked him if he acknowledged the indorsements thereon to be his signature, and said Greely answered that he did; and the witness further testified, that he carefully examined the signatures on said notes and had a recollection of them, and that said notes were afterwards paid by G. M. Sturdivant.

On cross-examination, this witness testified that he had never seen Greely Sturdivant write, and he should not feel able to testify to his signature without a comparison with other writings.

The plaintiff then exhibited the notes in suit to the witness and asked him to examine them. After the witness had examined them, he asked the witness to state whether, in his opinion, the name of Greely Sturdivant, on the notes in suit, was or was not the same handwriting as those which the witness had exhibited to Greely Sturdivant, belonging to the bank? The question, on objection being made by defendant, was excluded by the Court.

The plaintiff then asked the witness whether, taking those indorsements which Greely Sturdivant acknowledged to be his, to be genuine, in the opinion of the witness, if Greely wrote those which he acknowledged, he did or not write the indorsements on the notes in suit also. This question was also excluded on the objection of the defendant's counsel. The grounds of the objections do not appear in the exceptions.

By this ruling the plaintiff claims to have been aggrieved.

To prove the handwriting of a person, any witness may be called who has, by sufficient means, acquired a knowledge of the general character of the handwriting of the parties whose signature is in question. This may have been acquired from having seen him write, from having carried on a correspondence with him, or, as was decided in *Hammond's case*, 2 Greenl., 32, from an acquaintance gained from having seen handwriting acknowledged or proved to

be his. These are the sources of that previous knowledge which may qualify a witness to state his belief whether the handwriting in controversy is or is not genuine. *Page* v. *Homans,* 14 Maine, 478.

The same rule is established in Massachusetts and Connecticut. *Homer* v. *Willis,* 11 Mass., 309; *Moody* v. *Rowell,* 17 Pick., 490; *Lyon* v. *Lyman,* 9 Conn., 55.

Mr. Phillips, in his work on evidence, vol. 1, p. 222, says, — "for the purpose of proving handwriting, it will not be necessary, in the first instance, to call the supposed writer himself; the evidence of a person *well acquainted with the general character of his writing,* who, on inspecting the paper, can say that they believe it to be his handwriting, will be of itself sufficient." And, on the 224th page, the writer says, — "it has been held, in a prosecution for forgery of a bank note, that the signature in the same of the cashier of the bank may be disproved by any person *acquainted with his handwriting,* though the cashier would not be an incompetent witness." Again, "the writing may be disproved by others *acquainted with the character of his handwriting.*" Ib., 225.

"It is usual," says KENT, J., in *Titford* v. *Knott,* 2 Johns., 211, "for witnesses to prove handwriting from previous knowledge, of the hand, derived from having seen the person write, or from authentic papers received in the course of business. If the witness has no previous knowledge, he cannot then be permitted to decide it from comparison of hands."

The rule in England is, that handwriting cannot be proved by comparing the paper in dispute with other papers acknowledged to be genuine. 1 Phil. Ev., 490. The reason usually assigned for this rule is, says the author, that unless a jury can read, they would be unable to institute a comparison, or judge of the supposed resemblance. This reason does not seem to be entirely satisfactory to the writer. In this State, where ability to read and write is universal, the reason assigned for the rule has little or no force.

In New York, the same rule, as to comparison of hand-writing by juxtaposition, prevails as in England, but the reasons assigned for the rule by SAVAGE, C. J., in *Parker* v. *Phillips*, 9 Cow., 94, are more satisfactory, viz., that the specimens produced might be selected for the purpose; and that these specimens might be contested, and examined by others, and thus collateral issues might be introduced to an inconvenient length, and in the end might not be conducive to justice.

But whatever may be the rule in England or in other States as to proof by comparison of hands by juxtaposition, or whatever may be the reasons for the exclusion of this kind of evidence, the law in this State, admitting such testimony, is well settled. *Page* v. *Homans*, 14 Maine, 478; *Sweetser* v. *Lowell*, 33 Maine, 446. For this purpose, specimens of handwriting, not otherwise pertinent to the issue, but admitted or proved to be genuine, may be introduced before the Court and jury, as a standard for examination and comparison, by which to test the genuineness of the writing in controversy; and for this purpose such standard specimens may be compared by *experts*, in the presence of the jury, and such experts are permitted to express an opinion as to the fact whether the controverted paper be genuine or not, founded upon such comparison. Further than this, evidence, founded solely upon *comparison* of handwriting, has not gone. Witnesses who are not experts can express no opinion, based simply on comparison of specimens by juxtaposition. Whether a witness is or is not an expert is a question to be settled, in the first instance, by the Court, on a preliminary examination for that purpose. The value or weight of his testimony may be tested, after he is admitted, by an examination into the grounds or reasons for any opinion which he may express.

But it is contended that all opinions based upon previous knowledge of, or acquaintance with, handwriting, is in reality only the result of comparison; and of comparison made under much more unfavorable circumstances than when the

Woodman *v.* Dana.

admitted or proved specimens are brought in juxtaposition with that which is controverted. That in one case the image of the standard specimen, as it exists in the mind, is compared with the controverted specimen, in the hand of the witness; while in the other the standard is before the eye of the witness and placed side by side with that which is contested. That in the former the characteristics of the standard are necessarily indistinct, shadowy, and uncertain, while in the latter they show out in all the distinctness of visible characters. That in one case you compare existing tangible realities; in the other you compare a visible reality with an invisible, intangible impression in the mind. It is contended that the law in this State makes no distinction between the two cases. To sustain this position, *Hammond's case*, already cited, is relied upon. That case is not fully reported. But, when the few facts reported and the opinion of the Court are examined, it will be found in harmony with the general rule of law for the admission of this kind of evidence, as already stated, or, at least, it will not appear that the Court intended to disregard the distinction between opinions of witnesses based upon previous acquaintance or knowledge of handwriting, and opinions based solely upon the comparison of specimens placed in juxtaposition before the Court and jury.

In a certain sense the position of the counsel for plaintiff is undoubtedly correct. "All evidence of handwriting," says Mr. Greenleaf, in his work on Evidence, vol. 1, § 576, " except where the witness saw the document written, is in the nature of comparison. It is the belief which the witness entertains, upon comparing the writing in question with its exemplar in the mind, derived from some previous knowledge." And to the same point is the opinion in *Hopkins* v. *Megquire*, 35 Maine, 78.

By comparison is now meant an actual comparison of two writings with each other, in order to ascertain whether both were written by the same person; though formerly even comparing the standard formed in the witness' mind with

the writing in dispute was called evidence by comparison, and hence was deemed inadmissible, at least in criminal cases. 2 Starkie's Ev., 373.

From these authorities, and many others following in the same line, it will be seen that there is not an entire agreement among jurists and legal writers, as to the meaning that is to be attached to the words "comparison of hands," some confining it strictly to an examination of papers brought into juxtaposition, while others extend it to all cases, whether the standard of comparison is before the eye of the witness, or exists only in his mind. Misconception may therefore arise from not understanding alike the terms used. However that may be elsewhere, in this State the practical application of the rule is clearly defined and well settled. As we have clearly seen, no witness, except an expert, is competent to give an opinion simply by comparison of hands by juxtaposition, and this is done by the production of the standard in open court. Non-experts can only give opinions in cases where they have previous acquaintance and knowledge of the handwriting by which the genuineness of the controverted specimen is to be tested. And, in this case, the standard would not be present. The required previous knowledge may have been acquired by having seen the person write, — by having become acquainted with his handwriting by corresponding with him in the usual course of business, or by having examined specimens of writing proved or admitted to have been written by him. The expert need have no previous acquaintance or knowledge of his standard to authorize him to express an opinion from comparison. The non-expert cannot express an opinion without such previous acquaintance or knowledge.

The reason for this distinction is quite obvious.

The practiced eye of the expert will enable him to perceive the distinguishing characteristics or features in different specimens of handwriting, and at once to indicate the points of similarity or dissimilarity, though entirely unacquainted with the specimens presented. By long practice

and observation, he has become skilled in such matters. Not so with the non-expert. It is only when he has become familiar with the peculiarities of handwriting, as one becomes familiar with the countenance of his friend, or the characteristics of objects of common observation, that he is able to distinguish between it and other specimens that may bear only a slight resemblance to it.

In view of these principles and of the rule of law in this State, the question arises, was Small a competent witness to express an opinion as to the fact whether the indorsement on the notes in suit were made by the same person who made the indorsements on the notes of the bank, which Small presented to Greely Sturdivant, and which Sturdivant acknowledged to be his. It is contended he was not, because he testified, on the cross-examination, that he should not feel able to testify to Greely Sturdivant's signature without a comparison with other writings. It is apparently upon this ground, and for this reason, that his answer was excluded by the Court. And here lies the error. He had never seen Greely Sturdivant write, and therefore could not *know* his handwriting. But he had carefully examined signatures on these notes, which signatures Greely Sturdivant admitted to be his, and had a recollection of them. This brought the witness within the rule in *Hammond's case*, and within the rule of that class of cases where the witness obtains his knowledge by correspondence, or admitted or proved specimens. In none of these cases does the witness *know* that the specimen is in verity the autograph of the person it purports to be. But the circumstances of the case were so strong a presumption that such is the fact, that courts act upon it as true. Yet, in that whole class of cases, all that the witness can testify from knowledge is that the contested specimen does or does not resemble the admitted or proved standard. That it is or is not, in his opinion, in the same handwriting of such standard. This is necessarily the spirit and extent of the rule. A admits to B that certain signatures are his. B makes himself acquaint-

ed with the general character of those signatures. After thus becoming acquainted with the admitted specimens, B is called upon to give an opinion, as a witness, whether a specimen produced is, or not, the signature of A. If he has never seen A write, all he can say is, if the signatures which A admitted to him were his were so in fact, then, in my opinion, the specimens here presented is, or is not, (as the case may be,) the signature of A.

Greely Sturdivant had admitted to Small that those notes held by the Bank of Cumberland bore his, Sturdivant's, signature. Small had carefully examined those signatures and recollected them. He was afterwards called upon to state, as a witness, whether, in his opinion, the name of the indorser of the notes in suit was in the same handwriting as were the signatures which Sturdivant had admitted were his. The plaintiff was entitled to an answer.

It is contended, however, that, if this be so, it affords no cause for a new trial, because this witness was afterwards re-called by the plaintiff, and was permitted to testify that the indorsements on the notes presented by him to Greely Sturdivant and the indorsements on the notes in suit were in the handwriting of G. M. Sturdivant, and therefore that the plaintiff was not injured nor aggrieved by the exclusion of the rejected testimony. It is undoubtedly true that, where there has been an erroneous ruling, if it appear that no injury has been sustained thereby, a new trial will not be granted in consequence of such error. To determine whether injury has in fact resulted to the plaintiff, the situation of the parties and the condition of the case, as they then stood, must be considered.

The first position assumed and relied upon by the plaintiff was, that the indorsements on his notes were in the handwriting of defendant's intestate. To establish this proposition required only proof of the signature of the intestate. At the time the interrogatories now under consideration were put to the witness, the plaintiff had proved that the intestate had admitted that the name of Greely Sturdivant,

as indorser on the notes held by the Cumberland Bank, were his signatures. Had the witness been permitted to answer the questions proposed, and these answers had been in the affirmative, as it is presumed they would have been, the chain of evidence to establish his claim would have been complete. This would have thrown the burden of disproving the truth of his intestate's admissions upon the defendant.

By excluding this testimony, the plaintiff, to sustain his action, was compelled to abandon his first proposition, which was that the notes in suit were indorsed by Greely Sturdivant, and to disprove the truth of the intestate's admissions, on which he had relied, and to prove that the indorsements on the bank notes and the notes in suit were not in the handwriting of Greely Sturdivant, but in the handwriting of G. M. Sturdivant, and then further to prove that G. M. Sturdivant had authority to make the indorsements on the notes in suit in the name of defendant's intestate, or, if not so authorized, that the intestate had so conducted in relation thereto as to be estopped from denying that authority. This, it will be perceived, was imposing upon the plaintiff a more onerous duty than he would have been required to perform if he could have produced his testimony under his proposition to show that the indorsements were really in the handwriting of the defendant's intestate. By this ruling he was excluded from the more simple and direct mode of establishing his claim and compelled to resort to one more indirect, complex and difficult. Of this he has a right to complain, and it is not sufficient to say that he would have failed to establish his proposition that the name of Greely Sturdivant, on his notes, was in the handwriting of the defendant's intestate. It is sufficient to say the plaintiff would not have been compelled to prove the negative of that proposition, and the defendant might not have been able to do it.

On the principles already illustrated, the interrogatories propounded to the witness Baxter were properly excluded.

Woodman *v.* Dana.

Baxter was not an expert. The note which he had examined was not in Court. He was not asked for an opinion based upon previous acquaintance with the admitted or proved signature of Greely Sturdivant, but was asked for his opinion founded solely upon *comparison* of hands. But it is contended that the fact that Baxter made a comparison by juxtaposition of specimens did not render him less competent to give an opinion, based on former acquaintance with the general character of Greely Sturdivant's signature, than he would have been had he made no such comparison. That is true, and had the interrogatory been founded upon prior acquaintance with such signature, instead of knowledge obtained by comparison, the objection might not have prevailed.

The proof offered by Illsley is also within the rule in *Hammond's case.* The true question, as we have already shown, was not whether the witness, as matter of fact, was acquainted with the handwriting of Greely Sturdivant, but whether he was acquainted with the signature which said Sturdivant had admitted was his. If so, he had in his mind a legal standard by which to test the genuineness of the contested signatures. He could properly answer whether the name of the indorser on the notes in suit were or not in the same handwriting as that which had been admitted by the intestate to be his. His opinion, in such case, would be competent evidence, tending to charge the defendant. The fact, however, that Greely Sturdivant had acknowledged any signature or signatures to be his, would not conclusively establish the fact that they were so ; such admission might be shown to be erroneous ; but it would be competent and sufficient evidence to authorize a jury, in the absence of testimony to the contrary, so to find.

The question of estoppel, referred to in the argument of counsel, does not arise on the exceptions as presented.

*The exceptions are sustained and a new trial granted.*

TENNEY, C. J., GOODENOW and KENT, JJ., concurred.

Woodman *v.* Dana.

APPLETON and DAVIS, JJ., concurred in the result, and expressed their views in the following opinion drawn by

DAVIS, J.—The principal point in controversy at the trial of this case was not the genuineness of the signatures upon the notes in suit. There was, very little evidence that the signatures ·of the intestate, Greely Sturdivant, were genuine; while there was much testimony tending to prove that they were in the handwriting of Gardiner M. Sturdivant. Without conceding this, it was insisted by the counsel for the plaintiff that the intestate had acknowledged *similar signatures* to be genuine, and that he was therefore estopped from denying the genuineness of these. In support of this position, the case of *Bridgham* v. *Peters*, 1 Gray, 143, was cited. But the presiding Judge dissented from some of the doctrines laid down in that case, and held that, if the intestate did admit similar signatures, upon other notes, to be genuine, he was not estopped from contesting even those signatures, except as against parties taking the notes upon the strength of such admission; and that, *a fortiori*, he would not be estopped from contesting other similar signatures upon other notes, taken by other parties. He held that, if the signatures of the intestate upon the notes in suit were in the handwriting of Gardiner M. Sturdivant, the plaintiff was not entitled to recover, unless it was proved that the intestate had actually authorized Gardiner M. Sturdivant so to use his name, or had so conducted himself, by holding said Gardiner out to the public as having such authority, that persons might reasonably presume that such was the fact.

The plaintiff offered to prove that the signatures upon certain notes other than those in suit, admitted by the intestate to be genuine, were in the same handwriting as those upon the notes in suit, and the evidence was excluded. That branch of the case relating to the question of estoppel is not reported in the exceptions. But I am now satisfied that upon that point, as well as upon the question of the genuineness of the signatures, the testimony should have been admitted.