Hillsborough, } 
  Dec. 3, 1901. }

### University of Illinois *v.* Spalding.

Written statements of a witness inconsistent with his testimony at the trial may be read, and he may be questioned in relation thereto, for the purpose of disparaging his credibility.

A verdict will not be set aside for an objectionable remark of counsel when its prejudicial effect is found to have been nullified by an immediate retraction and apology.

Specimens of handwriting not admitted to be genuine and found in papers otherwise irrelevant are admissible in evidence for the purpose of comparison with a writing in dispute after their genuineness has been determined as a preliminary fact by the presiding justice, upon clear and positive testimony.

The fact that specimens of handwriting were made subsequent to the date of a writing in dispute does not render them inadmissible for the purpose of comparison therewith.

Debt, on a bond. Solomon Spalding was the only defendant named in the writ who was resident in this state, and the only one upon whom service was made or who appeared. Trial at the January term, 1901, of the supreme court before *Parsons*, J., and a jury, and verdict for the defendant. Transferred from the May term, 1901, of the superior court by *Wallace*, C. J., the statement of exceptions taken at the trial having been furnished by the presiding justice.

On January 18 the plaintiffs filed a motion to set aside the verdict as against the law and the evidence. Upon application first made on April 25, a hearing was had upon this motion at the May term of the superior court before *Wallace*, C. J., and Mr. Justice *Parsons* of the supreme court, who attended by request. The defendant excepted to any action by the latter, on the ground that

he was not a justice of the court having jurisdiction of matters formerly cognizable at trial terms, and claimed that the plaintiffs had waived the exceptions taken at the trial by delay and non-compliance with the fifty-third rule of court. It was found that the exceptions were not so waived, and that under the circumstances the rule ought not to be enforced against the plaintiffs. The motion to set aside the verdict was denied.

The stenographic notes of testimony given by the principal upon the bond in a suit against other sureties were used by agreement as a deposition. The witness having identified the signature of the defendant upon the bond, and having testified generally in behalf of the plaintiffs, was asked upon cross-examination if he knew of any defence to the bond, and replied in the negative. He was then shown a letter which he admitted was written by him to the defendant's attorney, and after examining it said that he did know of a defence available to the present defendant which he thought would be a valid one. This portion of the cross-examination was read subject to the plaintiff's exception, and was admitted with an instruction that it was material only as bearing upon the credibility of the witness. The letter referred to was offered in evidence by the defendant and excluded.

The defendant's signature as surety and the breach of the bond were admitted. The defence was that, after the bond was signed and before it was delivered to the plaintiffs, the name of one surety was erased and another written over it; and that the appearance of the signatures was such that ordinary care would have disclosed the erasure and substitution to the plaintiffs before acceptance of the bond. An enlarged photographic copy presented faint lines of the writing alleged to have been erased. The plaintiffs claimed that the erasure was of a part of the defendant's name accidentally written by him upon the line below his full signature; while the defendant denied that the words erased were in his handwriting. For the purpose of comparison the defendant introduced in evidence his signatures written upon stock certificates, and sworn to be genuine by him and by the treasurer of the corporation. The plaintiffs excepted to this evidence on the ground that the signatures were neither admitted to be genuine nor found in papers otherwise in the case, and, further, that they appeared to have been written at a date subsequent to the execution of the bond.

It appeared that the defendant was eighty-nine years of age, and that he was liable, if at all, for an amount exceeding the whole of his estate. In urging a careful consideration of the case because of its importance to the defendant, his counsel in closing argument said that the case involved the defendant's life as well

as his property.   Upon objection being made and an exception claimed, counsel withdrew the remark, requested the jury to disregard it, and apologized for the utterance ; and the presiding justice considered that the error, if any, was thereby cured.

*Charles J. Hamblett, Charles H. Burns,* and *John S. H. Frink,* for the plaintiffs.

*George B. French* and *Oliver E. Branch,* for the defendant.

REMICK, J.   1.   The judiciary system was not reorganized by the act of March 10, 1901, to legislate anybody out of court.   If the new system has any advantages over the old, it was intended that pending as well as future cases should have the benefit of them.   If the plaintiffs have lost the right of appeal, it is owing to their own laches — not to legislative nonsuit.   The finding of the presiding justice exonerates the plaintiffs from fault in this behalf, and the exception based upon this ground is therefore overruled.

2.   The questions and answers objected to in the stenographer's notes of the testimony of Charles W. Spalding were, in view of his testimony as a whole, as shown by the stenographic minutes before us, competent on cross-examination and as bearing on the credibility of the witness.   This was the ground upon which they were admitted, and no exception lies.

3.   The remark of the defendant's counsel in argument to the jury, that the case involved the defendant's life as well as his property, was immediately withdrawn and apologized for, and the presiding justice has found "that the error of the remark, if any, was cured."   The exception must therefore be overruled.   *Burnham* v. *Butler,* 58 N. H. 568 ; *Bullard* v. *Railroad,* 64 N. H. 27 ; *Jordan* v. *Wallace,* 67 N. H. 175 ; *Noble* v. *Portsmouth,* 67 N. H. 183 ; *Heald* v. *Railroad,* 68 N. H. 49, 50 ; *Pritchard* v. *Austin,* 69 N. H. 367 ; *Greenfield* v. *Kennett,* 69 N. H. 419.

4.   The exception next considered presents the question whether signatures of the defendant on papers otherwise irrelevant, and not admitted to be genuine, were admissible for the mere purpose of comparison with the signature in dispute.

By the general rule of the common law, comparison by juxtaposition was limited to the writing in issue and writings in the case for other purposes.   The introduction of writings otherwise irrelevant for the mere purpose of comparison was permitted only when the writing in issue was so ancient as not to admit of proof based on knowledge derived from seeing the party write or its equivalent.   1 Gr. Ev., *s.* 580 ; Laws. Ex. & Op. Ev., *ss.* 323,

329 ; Rog. Ex. Test., s. 136 ; 15 Am. & Eng. Enc. Law (2d ed.)
264, 265 ; *Bromage* v. *Rice*, 7 C. & P. 548 ; *Doe* v. *Newton*, 5
A. & E. 514 ; *Doe* v. *Suckermore*, 5 A. & E. 703 ; *Griffits* v. *Ivery*,
11 A. & E. 322 ; *Hickory* v. *United States*, 151 U. S. 303. This
general rule of the common law has been adopted and is enforced
in its integrity in the United States courts. *Strother* v. *Lucas*, 6
Pet. 763 ; *Rogers* v. *Ritter*, 12 Wall. 317 ; *Moore* v. *United States*,
91 U. S. 270 ; *Williams* v. *Conger*, 125 U. S. 397, 414 ; *Hickory* v.
*United States*, 151 U. S. 303 ; *Stokes* v. *United States*, 157 U. S.
187. It has also been adopted in most of the states. 1 Gr. Ev.,
s. 581 ; Rog. Ex. Test., s. 137 ; Laws. Ex. & Op. Ev. 371, 407 ;
15 Am. & Eng. Enc. Law (2d ed.) 265. The tendency, how-
ever, of legislation and judicial decisions is away from this strict
and narrow rule toward the more liberal one permitting compari-
son with any writing established to be the writing of the party
whose hand is in issue, whether otherwise relevant or not, and
without reference to the age of the particular writing in contro-
versy. 15 Am. & Eng. Enc. Law (2d ed.) 265, 269. The rule
has been so enlarged in England by the statute of 17 & 18 Vict.,
chapter 125, section 27. Also by statute in many of the states of
this country. 15 Am. & Eng. Enc. Law (2d. ed.) 270. In other
states the same result has been reached by judicial decisions.
Rog. Ex. Test., s. 138 *et seq.*; Laws. Ex. & Op. Ev. 371 ; 1 Gr.
Ev., s. 581 ; 15 Am. & Eng. Enc. Law (2d ed.) 267, 268 ; *Wood-
man* v. *Dana*, 52 Me. 9 ; *Adams* v. *Field*, 21 Vt. 256 ; *Moody* v.
*Rowell*, 17 Pick. 490. While more or less has been said to the
same effect by the courts in this jurisdiction, much, not in terms
overruled, has also been said to the contrary. *Myers* v. *Toscan*, 3
N. H. 47 ; *Bowman* v. *Sanborn*, 25 N. H. 87 ; *Reed* v. *Spaulding*,
42 N. H. 114 ; *State* v. *Shinborn*, 46 N. H. 497 ; *State* v. *Hastings*,
53 N. H. 452 ; *State* v. *Clark*, 54 N. H. 456 ; *Carter* v. *Jackson*,
58 N. H. 156.

In *Myers* v. *Toscan*, it was held that comparison was permissible
only in connection with evidence based on direct knowledge of the
handwriting in question ; and that in the absence of such prim-
ary evidence, comparison was wholly inadmissible. No mention is
made of the well-established common-law exceptions in favor of
writings otherwise in the case, and ancient writings not susceptible
of direct proof. The exclusion, so far as appears, was general,
subject only to the exception first declared.

In *Bowman* v. *Sanborn*, it was decided that comparison with gen-
uine writings in the case for other purposes was permissible, and
without proof based upon direct knowledge, to this extent modify-
ing the doctrine of *Myers* v. *Toscan*. The facts in *Bowman* v.
*Sanborn* bring it clearly within the common-law exception, and the

opinion is a distinct and unqualified recognition of the general common-law rule of exclusion.

In *Reed* v. *Spaulding*, the common-law rule was again followed. The court said: " It is only between signatures admitted to be genuine and which are in evidence before the jury, and the one in question, that the expert is allowed to institute a comparison and give an opinion."

A second case of *Reed* v. *Spaulding*, decided in Sullivan county, December law term, 1862, and not reported, is referred to in *State* v. *Hastings* as deciding that writings " might be introduced anew for the purposes of the comparison, as well as to use those already in the case for other purposes." It was incredible that a decision modifying so essentially the common-law rule and so at variance with all former decisions of the same court should have remained unreported; and it appears from an examination of the record that the papers used as standards of comparison in that case " had been introduced in the course of the trial for other purposes than that of comparison "; and the genuineness of the signatures had been established by evidence addressed to the court in order to make them admissible for such other purposes. They were therefore admissible for the purpose of comparison by the strict rule of the common law. There was no occasion to decide, and the court did not decide, that the papers would have been admissible for the mere purpose of comparison had they been otherwise irrelevant. On the contrary, the case fully supports *Bowman* v. *Sanborn*, and *Reed* v. *Spaulding*, 42 N. H. 114.

In *State* v. *Shinborn*, the signatures used for comparison " were not proved in for the purpose of enabling the expert to testify." They were undisputed signatures already in the case, and were therefore admissible according to the common-law rule and upon the authority of the cases in this jurisdiction up to that time.

In *State* v. *Hastings* the standard permitted to be used was not otherwise in the case, and was introduced for the mere purpose of comparison; and the opinion is there expressed, in language not open to doubt, that writings may be introduced for the mere purpose of comparison, although otherwise wholly irrelevant; and this, too, without regard to the age of the writing in issue, or whether testimony based on direct knowledge is or is not already in the case. As shown, this is contrary to the common law and all previous decisions in this state. Moreover, it was based, in part at least, upon the erroneous assumption that a similar result had been previously reached in the unreported case of *Reed* v. *Spaulding*. More than this, there was no evidence whatever before the court or the jury that the writing offered for comparison was the defendant's. To use the words of the court: " There is no more evidence that the prisoner wrote it than that anybody else did."

The question whether specimens otherwise irrelevant are admissible for the mere purpose of comparison could not properly arise until a specimen was offered. None was offered in that case. ·What was offered was no more a specimen than if it had been a piece of blank paper. What the court said, therefore, on the general subject was the merest *dictum*, and, right or wrong, without the weight of a judicial decision. In fact, it is stated in the opinion that the portion relating to the comparison of handwriting was written supposing that there would be an amendment of the case to warrant it, which amendment was not obtained. Altogether, it is not a satisfactory case to mark so radical a departure from the common law and from the earlier New Hampshire cases, which it did not assume to overrule.

In *State* v. *Clark*, the standard introduced for comparison was apparently not in the case for any other purpose, and it was admitted to be genuine; but other evidence was introduced based on direct knowledge of the defendant's handwriting. The admission of the standard was sustained, but no authority was cited, and it is impossible to know from the opinion whether the decision was based upon the doctrine in *State* v. *Hastings*, or the doctrine of *Myers* v. *Toscan*, to which the language of the opinion would seem to be applicable. If the latter, then the question whether genuine writings not otherwise in the case are admissible for the purpose of comparison was not involved in the decision. On the question whether the court understood the case to be controlled by *State* v. *Hastings*, it is not without significance that the learned judge, who had participated in that opinion only a year previous, did not cite it nor make mention of it whatsoever.

In *Carter* v. *Jackson*, the signature to a bond was in dispute. "The jury were allowed to compare it with other genuine signatures." The court said: "The ruling . . . upon the question of the comparison of handwriting was correct." It does not appear whether the signatures compared were in the case for other purposes. If they were, the decision was correct according to the rule of the common law. If not, and they were admitted for the mere purpose of comparison, the decision was contrary to *Myers* v. *Toscan*, *Bowman* v. *Sanborn*, *Reed* v. *Spaulding*, and *State* v. *Shinborn*. The question does not seem to have received special consideration, and to all appearances the decision was made to rest upon the *dictum* in *State* v. *Hastings*.

. While the law remains in the conflicting and inconclusive shape disclosed by the foregoing review of the authorities, confusion and controversy are inevitable. Consistency and efficiency alike require a definite rule authoritatively declared. In this view we have re-examined the question, both from the point of reason and authority.

It may be safely stated as a fundamental proposition that, on the question whether a given signature is in the handwriting of a particular person, comparison of the disputed signature with other writings of that person known to be genuine is a rational method of investigation, and that similarities and dissimilarities thus disclosed are probative and as satisfactory in the instinctive search for truth as opinion formed by the unquestioned method of comparing the signature in issue with an exemplar of the person's handwriting existing in the mind and derived from direct acquaintance, however little, with the party's handwriting.

The objections upon which the common-law rule of exclusion is founded are threefold: (1) Ignorance of jurors and their inability to make intelligent comparison; (2) danger of unfairness and fraud in the selection of specimens, with no sufficient opportunity for the opposing party to investigate and expose; (3) collateral issues as to the genuineness of the specimens presented.

(1) The first objection, however justified by the state of English society when it was originally announced, has no weight at the present time in a jurisdiction where intelligence and education are general, and needs no further comment. (2) Since the right to produce specimens under a rule allowing comparison is equally open to both parties, and the specimens are all subject to examination and cross-examination, the opportunity for advantage from unfair selections is too slight to furnish reason for closing the door against this important avenue of investigation. (3) The third objection — that to permit comparison with specimens not otherwise in evidence, and admitted for the mere purpose of comparison, would introduce collateral issues and confuse and distract the jury — is, when applied to specimens neither admitted by the parties nor found by the court to be genuine, firmly grounded in reason and authority. The whole doctrine of comparison presupposes the existence of genuine standards. Comparison of a disputed signature in issue with disputed specimens would not be comparison in any proper sense. When the identity of anything is fully and certainly established, you may compare other things with it which are doubtful, to ascertain whether they belong to the same class or not; but when both are doubtful and uncertain, comparison is not only useless as to any certain result, but clearly dangerous and more likely to bewilder than to instruct a jury. If disputed signatures were admissible for the purpose of comparison, a collateral inquiry would be raised as to each standard; and the proof upon this inquiry would be comparison again, which would only lead to an endless series of issues, each more unsatisfactory than the first; and the case would thus be filled with issues aside from the real question before the jury.

Juries are indeed more intelligent than when the common law denied them even the right to make comparison with admitted signatures not otherwise in the case; but the time has not yet come when they should be left without chart or compass. It is due to them and to the administration of justice that when called upon to pass upon the identity of a signature the standards furnished for this purpose should be genuine standards. The jury should not be required, nor should they be permitted, to make comparison with disputed standards, and to settle for themselves the collateral question of the genuineness of the standards, which might often be more difficult than the main question of the genuineness of the writing in issue. Such a practice is not only indefensible in reason, but it is against the judicial and legislative opinion of the world, almost without exception. 15 Am. & Eng. Enc. Law (2d ed.) 272, 273; Laws. Ex. & Op. Ev. 408; Rog. Ex. Test., *s.* 138. By the civil and ecclesiastical law, where a more liberal rule of comparison prevailed than at common law, the genuineness of the standard was an indispensable prerequisite to its admission. By the ecclesiastical law, " the instruments of comparison were required to be proved by witnesses who saw them written; and it was for the judge to decide whether they were sufficiently proved." By the civil law, it was provided that " the writing must either be of a public nature, such as signatures made before a notary or judge, etc., or papers written or signed in some public capacity; or, if private papers, they must be admitted, in the case, by the party to whom they are attributed, to be of his own handwriting. A previous admission of them or previous proof will not make them admissible." The controversy in the great case of *Doe* v. *Suckermore* was not to secure the admission of disputed signatures to be passed upon by the jury, but to the end that specimens already established to be genuine might be used as a basis of comparison. *Williams,* J., and *Denman,* C. J., while contending in that case for the right to compare specimens admitted to be genuine, expressly conceded that disputed specimens should not be permitted to go to the jury. A few years later, the inherent value of comparison as a method of proof, and the inconsistency of permitting it with papers happening to be in the case and denying it with genuine specimens admitted for the purpose, was recognized by parliament by 17 and 18 Vict., chapter 125, section 27, as follows: " Comparison of a disputed writing with any writing proved to the satisfaction of the judge to be genuine shall be permitted to be made by witnesses; and such writings and the evidence of the witnesses respecting the same may be submitted to the court and jury as evidence of the genuineness, or otherwise, of the writing in dispute."

While the refinements, distinctions, and exceptions which had confused the subject and embarrassed the administration of justice were thus wiped away, and the door opened wide for comparison with genuine specimens, it is to be noted that the essential principle of the common law forbidding disputed signatures and collateral issues was distinctly preserved by the provision limiting comparison to writings "proved to the satisfaction of the judge to be genuine." So, wherever the door has been opened to this class of proof, whether by legislation or by judicial expansion and adaptation of the common law, the same safeguard has been preserved. Rog. Ex. Test., s. 138 ; Laws. Ex. & Op. Ev. 408 ; 15 Am. & Eng. Enc. Law (2d ed.) 273. *State* v. *Hastings* is a notable exception. There the court said : " In England, under that statute, the jury probably need not consider the question of the genuineness of the paper, . . . as the statute seems to make the finding of the judge on that point conclusive ; but without such a statute, it would seem to be necessary that the evidence of the genuineness of such paper should be introduced to the jury, and then that the jury should find that fact for themselves upon all the evidence. With this modification, we see no reason why this English rule may not be adopted in this state as a plain and just rule to be followed in all such cases." Of the doctrine involved in the suggested modification, it may be said : (1) It is *dictum*. (2) It is opposed to the whole body of English and American authority. (3) It is contrary to general opinion and policy, as indicated by the whole trend of modern legislation. (4) It is unsupported by any, and is contrary to many, New Hampshire cases. *Myers* v. *Toscan*, 3 N. H. 47 ; *Bowman* v. *Sanborn*, 25 N. H. 87 ; *Reed* v. *Spaulding*, 42 N. H. 114 ; *State* v. *Shinborn*, 46 N. H. 497. The head-note to *Carter* v. *Jackson* — " A jury may compare a disputed signature with others admitted, *or found by them, to be genuine* "— was (at least, the portion italicized) wholly unwarranted either by the facts of the case or the opinion of the court. (5) It was based upon *State* v. *Ward*, 39 Vt. 225, which has since been repudiated by the same court. *Rowell* v. *Fuller*, 59 Vt. 688. (6) It has been reviewed in Maine and rejected. *State* v. *Thompson*, 80 Me. 194. (7) Text-writers have criticised it. Rog. Ex. Test., s. 138 ; Laws. Ex. & Op. Ev. 395, 397. Finally, it is as unsound as it is anomalous. If adhered to as a rule, it would make comparison a source of confusion rather than of instruction. Its vices may not be emphasized by every case, but they are nevertheless inherent and obvious, and should not have judicial sanction. The true rule is, that when a writing in issue is claimed on the one hand and denied upon the other to be the writing of a particular person, any other writing of that person's may be admitted in evidence for the mere

purpose of comparison with the writing in dispute, whether the latter is susceptible of or supported by direct proof or not; but before any such writing shall be admissible for such purpose, its genuineness must be found as a preliminary fact by the presiding judge, upon clear and undoubted evidence. *State* v. *Thompson*, 80 Me. 194; *Rowell* v. *Fuller*, 59 Vt. 688; *Commonwealth* v. *Coe*. 115 Mass. 481; *Costelo* v. *Crowell*, 139 Mass. 588; *Bragg* v. *Colwell*, 19 Ohio St. 407, 413; Rog. Ex. Test., *s.* 138; Laws. Ex. & Op. Ev. 408; 15 Am. & Eng. Enc. Law (2d ed.) 273. This involves, indeed, a marked departure from the common law. It does away with the common-law limitation of comparison to standards otherwise in the case, and hence with its exceptions and the controversy and confusion which have grown out of them. It also abrogates the rule of *Myers* v. *Toscan*, making proof by comparison dependent upon the introduction of primary proof based on knowledge. In some states, as already shown, legislation has been deemed essential to bring about such changes; but in others, as we have also shown, the same result has been accomplished by judicial action. As the common-law rule was based primarily upon the assumed incapacity of jurors to make intelligent comparison, such judicial action would seem warranted under the power to adapt the common law to new conditions. The value of comparison as a method of proof being now generally conceded; juries being no longer too ignorant to derive benefit from that source; the danger of spurious specimens and the objections to collateral issues being fully met by requiring the genuineness of the standard to be determined as a preliminary fact by the trial judge, there remains, it would seem, no satisfactory reason for the old limitations and exceptions. And it is fair to assume that, had no statute been enacted, the common law of England, adjusting itself to changed conditions, would now accord with the rule we have announced. Such a tendency was indicated by the discussion and decision in *Doe* v. *Suckermore*, which was so soon followed by the act of parliament referred to. In any event, the essential principle of the common law is preserved, and the dangers and objections against which it was aimed met, by requiring the genuineness of the standard to be found by the court as a preliminary fact, upon clear and positive testimony.

In the present case, no objection appears to have been made to the introduction of the specimen signatures upon the ground that their genuineness had not been predetermined by the court; and what has been said upon this subject has been said incidentally to the discussion of the main question and with reference to a rule of practice for future guidance, and not because it was required by the exception. The exception, as we understand it, rests upon

the fundamental ground that writings not otherwise in the case and not admitted to be genuine are inadmissible for the purpose of comparison, even though first shown to be genuine to the satisfaction of the court. This is contrary to the conclusion we have already announced.

5. The exception to the admission of the signatures because they were made subsequent to the time the bond purported to have been made cannot be sustained. True, " the claimed author of disputed writings cannot make testimony in his favor by bringing in for comparison a writing manufactured by him for that very purpose after the controversy has arisen. He is confined to the production of papers written by him before the controversy commenced, or those subsequently made by him in the usual course of business and under such circumstances as to negative all idea that they were made for the purpose of being used as evidence in his own favor. A party cannot be allowed to manufacture this class of testimony more than any other in his favor. The utmost limit to which the cases and practice go in this respect is to allow the opposing party, when the upholding party takes the stand as a witness, in cross-examination to call upon him to write in the presence of the jury, that he may use such specimens of his writing for comparison with the disputed writing by the jury and experts against him." *Sanderson* v. *Osgood*, 52 Vt. 309; *King* v. *Donahue*, 110 Mass. 155; *Hickory* v. *United States*, 151 U. S. 303. There is no pretence in the present case that the signatures introduced for the purpose of comparison were made after controversy arose, or that they were manufactured for the purpose of comparison. The mere fact that they were made subsequent to the execution of the bond is not sufficient to render them inadmissible.

*Exceptions overruled.*

PARSONS, J., did not sit: the others concurred.