### Quincy Gas & Electric Company v. Emelie E. Schmitt, Administratrix.

1. Res ipsa loquitur—*when doctrine of, applies.* Where an injury results from an instrument or appliance exclusively within the control and supervision of the defendant, which injury would not, in the ordinary course of things, have resulted if proper care had been exercised by the defendant, the doctrine of *res ipsa loquitur* applies.

2. EXPERT WITNESS—*should be permitted to give reasons.* Where an expert opinion is competent, the reasons upon which such opinion is based are likewise competent.

3. ACT OF GOD—*when does not excuse negligence.* Negligence is not excused by reason of the intervention of the act of God, if such negligence alone was either the proximate cause of the injury or concurring with such act of God was such proximate cause.

Action on the case. Appeal from the Circuit Court of Adams County; the HON. ALBERT AKERS, Judge, presiding. Heard in this court at the May term, 1905. Reversed and remanded. Opinion filed February 1, 1906.

JOSEPH N. CARTER and MATTHEW F. CARROTT, for appellant.

SCHLAGENHAUF & SCHLAGENHAUF and H. E. SCHMIEDES-KAMP, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

Appellee recovered a verdict and judgment against appellant in the Circuit Court of Adams County for $5,000 for negligently causing the death of her husband, Leonard Schmitt. The declaration contains three counts. The first alleges in substance that appellant was engaged in generating and supplying electricity for power and lighting, to its patrons for hire, such electricity being distributed on wires suspended on poles erected in and along the public streets of the city of Quincy; that said wires were then and there charged with powerful currents of electricity, to wit: 2,400 volts, which were dangerous to human life, as appellant then and there well knew; that appellant had contracted with the Knapheide Wagon Company to furnish electricity over said wires to the buildings and shops of said company, for power and illuminating purposes, and had connected its wires to the wires and lamps then and there being in said buildings and shops for the purposes aforesaid; that said electricity was passed from the main wires into the buildings and shops of said company through a transformer placed on a pole at the northeast corner of Sixth avenue, south, and State street, which transformer, when properly built and maintained,

greatly reduced the current of electricity passing through the main line on Sixth avenue, south, by induction from said main or primary wires passing into said transformer, to the secondary wires in said transformer leading into said buildings and shops, to a voltage which could be safely used therein, to wit : a voltage of 104 volts; that it then and there became the duty of appellant to keep its plant and wires and the appurtenances used and employed in supplying electricity to said buildings and shops in good condition and repair, and to keep the primary and secondary wires in said transformer properly protected and insulated in order that the primary wires therein would not become joined; that appellant, not regarding its said duty, negligently permitted its said plant, wires and other conductors of electricity, and appurtenances used in furnishing light and power to said buildings and shops, to become and remain out of repair and condition, and failed to have the primary and secondary wires in said transformer properly protected and insulated, in consequence whereof said primary and secondary wires became joined and united, and said powerful current of electricity passed from said primary wires into the secondary wires leading into said buildings and shops, so that the electric current escaped therefrom and became liable to be communicated to persons and employees using the lamps and power in said buildings and shops; that while the deceased, Leonard Schmitt, who was then and there an employee of the said Knapheide Wagon Company, and was then and there lawfully in said buildings and shops attending to his duties as foreman of said company, with all due care and diligence on his part, and was then and there in the act of turning on one of said lamps in the basement of the cellar of said buildings and shops, through the negligence of appellant as aforesaid, the said electric current escaped and was grounded and passed through the body of said Schmitt, and he was thereby killed, etc. The second count is substantially the same as the first, except that it charges appellant with negligence in failing to provide and place a proper lightning arrester on said trans-

former, so that said transformer was disabled, ruined and in bad condition, and unable to perform its functions, and became defective, so that the said powerful current of electricity passed into the buildings and shops of said company, and the entire current of 2,400 volts passed through the body of deceased and killed him as aforesaid. The third count is substantially the same as the second. To this declaration appellant pleaded the general issue.

It is established by the evidence that the Knapheide Wagon Company had caused its buildings and shops to be wired for its use in supplying light and power by the Tenk Hardware Company, which wires were carried to the wall of its buildings for connection with the wires of the plant furnishing the electricity; that appellant, on undertaking to furnish electricity to the buildings and shops of the Knapheide Wagon Company, had connected its secondary wires leading to its transformer on one of its poles on the opposite side of the street, with the wires of said company in its factory building and had placed a meter at such point of connection; that appellant's two primary wires leading from its transformer to its dynamos carried a voltage of 2,100 volts to the transformer, and that the transformer, when in proper working order, reduced the voltage to 104 volts to be carried on the secondary wires leading to the wagon shop; that a voltage of 2,100 volts was dangerous when communicated to a person through the wires and apparatus installed in the buildings and shops, but a voltage of 104 volts could be thereby used with safety. It is further established by the evidence that at about five o'clock p. m. on May 18, 1903, appellee's intestate, Leonard Schmitt, employed as a foreman by the Knapheide Wagon Company, went into the cellar of the wagon shop and while there attempting to turn on the electricity in an incandescent lamp, received the shock resulting in his death; that said incandescent lamp in the cellar was suspended from the ceiling above by a wire cord, to which was attached at the lamp a brass socket without a lining of non-conducting material, and that around such brass socket and the lamp attached

to it was an elliptical shaped wire guard about four inches in diameter, not protected by insulation; that in attempting to turn on the light deceased necessarily stood on the damp earth floor of the cellar; that at the time of the accident the transformer was so defective that it failed to reduce the voltage on the primary wires of appellant and the entire current of 2,100 volts, carried by said primary wires, passed into the secondary wires connected with the wires in the buildings of the Knapheide Wagon Company.

The case made by appellee at the close of her evidence, eliminating such as affirmatively tended to show negligence on the part of appellant in maintaining a defective transformer and in failing to properly equip the same, was clearly one to which the doctrine of *res ipsa loquitur* applied. It must be conceded that the transformer was the property of appellant, and was exclusively within its control and supervision; that the death of appellee's intestate was directly attributable to the failure of the transformer to reduce the voltage carried by the primary wires from 2,100 volts to 104 volts, and that in the ordinary course of its operation, by the exercise of proper care on the part of appellant, no injury would have resulted to the deceased in his attempt to light the lamp in the manner and by the means employed by him. The case meets every requirement for the application of the doctrine of *res ipsa loquitur*. I. C. R. R. Co. v. Swift, 213 Ill. 307.

A presumption of negligence on the part of appellant having been created by the circumstances under which deceased was killed (Chicago City Ry. Co. v. Barker, 209 Ill. 321), the court did not err in refusing to give to the jury the peremptory instruction requested by appellant at the close of appellee's evidence.

The transformer in question was of the Wagner type, which, as constructed, consists of two coils, a primary and secondary, wound on an iron core built up of a number of layers of iron, the edge of each layer being separated from the primary coil and from the secondary coil by mica. The ends of the primary coils are connected to an interchange-

able device which is the terminal block, and from here to the fuses outside the transformer; the secondary coils pass from the block through the box and are connected to the secondary mains, being the wires directly connected with the wires in the building. The box enclosing the transforming or reducing device is of cast iron and has an iron cover with a felt gasket, fastened with machine screws, and the box is thus made air-tight. The electric current passing into the primary coil in 2,100 volts sets up a magnetism in the iron core, and that magnetism in turn sets up a current of 104 volts in the secondary coil. The reduction is by induction from the primary to the secondary coil and not by contact. For the purpose of increasing the insulation and reducing the heat in the coils the box is filled with oil. The fuses, mentioned as being outside the transformer, and to which the primary wire was connected, were on or near the cross-arm of the pole to which the transformer was attached, and consisted of wires of a low heating capacity intended to melt away or fuse, and thus cut the current off from the transformer in the event of an overcharge of electricity in the primary wire leading to the transformer.

It appears from the evidence that on the day of the accident beginning at about 2 or 2:30 o'clock in the afternoon, and continuing with more or less severity for an hour and a half or two hours, a violent storm accompanied by thunder, lightning, rain and high wind prevailed in the city of Quincy. Henry Bloom, a witness for appellee, testified that a few minutes before 5 o'clock he saw a blaze of fire about eighteen inches long above the transformer; that the blaze appeared white with a bluish tinge and lasted a few minutes. Predicated upon this testimony, N. C. Draper, called as an expert witness by appellee, testified that in his opinion the blaze or flame was caused by the oil in the transformer getting hot, flooding the transformer and taking fire on the outside, and that the transformer was defective before the fire started. He further testified that if the fuses had been in proper condition, an overcharge of

electricity in the primary wire would have melted them
and opened the circuit, so that the current could not pass
through the transformer to the buildings. This was clear-
ly affirmative evidence tending to prove the negligence al-
leged in the declaration.

On behalf of appellant, for the purpose of escaping
liability, it was contended, and it introduced evidence
strongly tending to support such contention, that the trans-
former was broken and rendered defective by a direct bolt
of lightning during the storm spoken of, and that this oc-
curred so recently before the accident that appellant did
not and could not in the exercise of ordinary care know or
learn of it in time to prevent the accident. It was also
contended on behalf of appellant, that the wiring in the
building of the Knapheide Wagon Company was old, worn
out and defective; that if said building had been properly
wired, the deceased would have sustained no injury in at-
tempting to turn on the light. Appellee, insisting that it
was the duty of appellant to supervise and safeguard the
wiring in the factory buildings, and that its negligence in
that regard justified a recovery under the declaration,
seconded the efforts of appellant to discredit such system
of wiring and its efficiency. Under the evidence in this
record it is clear that the wiring in the factory buildings
was wholly adequate to carry a current of 104 volts, with-
out injury to any person or employee ordinarily using it.

The Knapheide Wagon Company contracted with appel-
lant to supply a current of only 104 volts, and appellant
must be held to have known that it must limit its current
to that voltage; that the supply of a greater voltage would
be dangerous. The Knapheide Wagon Company had a
right to rely on such contract, and was under no duty to
install and maintain in its buildings a system of wiring
necessary safely to carry a current of greater voltage.

But if the system of wiring in the factory buildings had
been defective and inefficient, appellant could not thereby
escape liability, if its negligence as alleged in the declara-
tion had been established as a proximate cause of the death

of appellee's intestate.   City of Joliet v. Shufeldt, 144 Ill.
403.   Such proof could not avail appellee anything, first,
because the declaration does not aver negligence of appel-
lant in installing, inspecting or repairing the system of
wiring in the buildings, and, second, because appellant not
having installed such system, having no control over it, and
never having assumed the duty of inspection or repair, was
not bound to inspect the same and maintain its efficiency.
Smith v. Pawtucket Gas Co., 24 R. I. 292, 96 Am. St. R.
713.

It was most important for appellant to show, if possible,
that the transformer and fuses in question were properly
constructed and free from any defects existing prior to the
accident, and that the defective conditions from which the
injury resulted, were caused solely and immediately by an
act of God, whereby appellant might be relieved from
liability.   The functions of electrical appliances, and the
exact method by which such appliances perform those
functions, are not subjects of common knowledge and are
not easily comprehended by the lay mind, and in cases in-
volving such questions a wide latitude should be allowed
counsel in the examination of witnesses assuming special or
expert knowledge, to the end that the court and jury may
obtain as full information as possible upon the subject.

Upon the trial, we think the court erred, to the prejudice
of appellant, in excluding certain evidence offered by it. A
few instances must suffice.   The witness John H. Nessler
should have been permitted to state the effect on the ground
of the secondary wires and the transformer, in case of a
stroke of lightning on the wire.   The witness John L. Nis-
wander should have been allowed to state his opinion as to
the effect produced by a like cause.   The same witness
should also have been permitted to state the reasons for
some of his expert opinions.   The value of an expert's
opinion may be increased or diminished by a statement of
the reasons upon which it is based, and such reasons are,
therefore, proper to go to the jury and to be considered by
them in weighing the evidence of the witness.   Demmeritt

v. Randall, 116 Mass. 331; Woodman v. Dana, 52 Me. 9; Cram v. City of Chicago, 94 Ill. App. 199.

On cross-examination of appellant's witness, Nessler, counsel for appellee was permitted to inquire whether appellant had devices at its station by which the electrical current could be cut off, or the plant shut down. The question was objected to as not proper cross-examination, and because there was no allegation in the declaration to support a recovery for a failure to cut off the current of electricity, or shut down the plant. The objection should have been sustained.

The 16th instruction, given at the request of appellee, in effect holds appellant responsible for any defect in the system of wiring in the buildings of the Knapheide Wagon Company, and predicates a right of recovery for negligence not alleged in the declaration. The 9th instruction given at the request of appellee is not open to the criticism that it assumes appellee is entitled to damages. By the express language of the instruction the jury were left to determine from the evidence, whether the widow and child of the deceased had sustained any damage.

The natural instincts of self-preservation, and the presumption that the deceased would not voluntarily incur a known danger were sufficient upon which to predicate the language objected to in appellee's 15th instruction.

Instructions 26, 31 and 39½, tendered by appellant, were correct statements of the law applicable to the facts and should have been given to the jury. Appellant's instructions 36 and 37, as tendered, informed the jury that it would not be liable if the death of appellee's intestate was caused by a stroke of lightning which appellant could not control or prevent. Assuming that a stroke of lightning is an act of God, it may be further assumed that appellant could not prevent or control it. But the instructions ignored the principle of law appellant concedes to be correct, by which it would be liable if its negligence combined with the act of God to cause the death of appellee's intestate. To remedy this defect in the instructions, the

court modified the same by adding a clause to each, which, although not technically correct, stated the law with substantial accuracy. The other instructions refused, of which complaint is made by appellant, were sufficiently covered by those given.

The material issues in this case are within a very narrow compass. If the death of Leonard Schmitt was caused by an act of God, unmixed with the alleged negligence of appellant, as a proximate cause, appellant cannot be held liable. If, however, appellant was negligent as alleged, and such negligence as a proximate cause, alone, or concurring with an act of God, caused the death, it is liable.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*