David S. SANDS

v.

Michael J. CUNNINGHAM, Warden,
New Hampshire State Prison.

Civ. No. 85–216–D.

United States District Court,
D. New Hampshire.

Oct. 1, 1985.

Thomas R. Watson, Portsmouth, N.H., for plaintiff.

John A. Malmberg, Asst. Atty. Gen., Concord, N.H., for defendant.

## OPINION

DEVINE, Chief Judge.

Petitioner brings this application for writ of habeas corpus pursuant to 28 U.S.C. § 2254, claiming that his December 13, 1978, conviction for two counts of perjury (N.H. RSA 641:1), the sentence imposed following the conviction, the sentence review by the state's Sentence Review Division, and the state appellate process were constitutionally infirm. Petitioner has raised seventeen grounds for relief.

### Procedural History

Petitioner was indicted in 1977 for perjury arising out of his involvement in a civil proceeding concerning real estate in Carroll County. Plaintiff perjured himself by falsely identifying an individual responsible for signing a petition for ex parte attachment in this underlying civil matter. A detailed factual background of this case is contained in the New Hampshire Supreme Court opinion affirming petitioner's conviction, State v. Sands, 123 N.H. 570, 582–88, 467 A.2d 202 (1983), and will not be repeated here.

Convicted in 1978, petitioner timely appealed to the New Hampshire Supreme Court, raising Grounds One through Five and Eight through Fourteen now contained in the petition for habeas relief. The New Hampshire Supreme Court affirmed the conviction. State v. Sands, supra. Petitioner also appealed his sentence to the Superior Court Sentence Review Division, which affirmed the sentence. Petitioner then filed a petition for writ of certiorari with the New Hampshire Supreme Court seeking review of the Sentence Review Division's decision and raising Grounds Six and Seven now contained in the petition for habeas relief. The New Hampshire Supreme Court summarily affirmed the decision of the Sentence Review decision by denying the petition without opinion in October 1984. Petitioner also made several post-conviction motions raising Grounds Fifteen, Sixteen, and Seventeen now contained in the petition for habeas relief. These motions were denied by the trial court, and petitioner appealed to the New Hampshire Supreme Court, which summarily affirmed that decision in January 1985. Petitioner filed his petition for writ of habeas corpus with this Court on April 1, 1985, and respondent, pursuant to the Court's Order of May 8, 1985, has filed a response to show cause why the writ should not be granted. For the following reasons, the Court finds and rules that the petition for writ of habeas corpus must be denied.

### Analysis

*Ground One:* Petitioner herein claims that his Sixth and Seventh Amendment rights were violated when the trial court withdrew "materiality", an essential element of perjury under RSA 641, from jury consideration. The Court does not agree.

While it is established that the State must prove every element of an offense beyond a reasonable doubt, *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), it is also established that courts, rather than juries, should decide questions of law. *See State v. Sands, supra,* 123 N.H. at 592, 467 A.2d 202. In the instant case, the New Hampshire Legislature in drafting RSA 641 specifically reserved determination of "materiality" for the trial court. *See* RSA 641:1. This reservation is consistent with the rulings of the United States Supreme Court and the First Circuit Court of Appeals. *See Sinclair v. United States,* 279 U.S. 263, 298, 49 S.Ct. 268, 273, 73 L.Ed. 692 (1929) ("materiality of what is

falsely sworn, when an element in the crime of perjury, is one for the court"); *United States v. Scivola*, 766 F.2d 37, 44 (1st Cir.1985) ("materiality is a legal question to be decided by the trial court") *citing, United States v. Kehoe*, 562 F.2d 65, 68 (1st Cir.1977), *and United States v. Romanow*, 509 F.2d 26, 28 (1st Cir.1975). The Court, accordingly, bound by established precedent, finds and rules that the state trial court's determination of "materiality" under RSA 641 did not violate petitioner's Sixth and Seventh Amendment rights since determination thereof was a legal question properly reserved to the trial court.

*Ground Two:* Petitioner herein expands his claim under Ground One to claim that this Fifth, Eighth, and Fourteenth Amendment rights were violated when the trial court declined to instruct the jury on a lesser included offense, false swearing. For the following reasons, the Court does not agree.

■ A defendant is entitled to a lesser included offense instruction in certain circumstances. According to the United States Supreme Court in *Beck v. Alabama*, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), a lesser included offense instruction is required by due process when warranted by the evidence. The Supreme Court further outlined federal constitutional standards for lesser included offense instructions in *Hopper v. Evans*, 456 U.S. 605, 612, 102 S.Ct. 2049, 2053, 72 L.Ed.2d 367 (1982): "The federal rule is that a lesser included offense instruction should be given 'if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater.' *Keeble v. United States*, 412 U.S. 205, 208 [93 S.Ct. 1993, 1995, 36 L.Ed.2d 844] (1973)." Accordingly, where the evidence presented to the jury would not permit a finding of guilty on the lesser offense, the failure to instruct thereon is not a constitutional infirmity.

■ In the instant case, the only difference under RSA 641 between felonious perjury and the misdemeanor of false swearing is the element of materiality required for perjury. The trial court made the determination that petitioner/defendant's statements were material. The fact that the jury did not make this determination, as discussed above, does not raise a constitutional issue. The Court accordingly concludes that since materiality had already been determined, the evidence presented to the jury would not permit a finding of guilty on the lesser included offense of false swearing; hence a failure to instruct thereon did not violate petitioner's rights under the Fifth, Eighth, and Fourteenth Amendments.

*Ground Three:* Petitioner herein claims that his Fifth and Fourteenth Amendment rights were violated when the trial court allowed evidence on the element of materiality to be admitted in the presence of the jury.[1] According to petitioner, this evidence was irrelevant, immaterial, confusing, and prejudicial, and its admission denied him a fair trial. For the following reasons, the Court does not agree.

In reviewing a state court conviction on petition for habeas corpus, the Court is limited to searching for constitutional error. 28 U.S.C. § 2254(a); *Grieco v. Meachum*, 533 F.2d 713, 716 (1st Cir.1976), *cert. denied sub nom., Cassesso v. Meachum*, 429 U.S. 858, 97 S.Ct. 158, 50 L.Ed.2d 135 (1976).

■ In the instant case, the Court cannot find constitutional error in the admission of evidence pertaining to the materiality of petitioner's statements. The elements of materiality, falsity, and mental state under RSA 641 were intertwined in this case, and the evidence pertaining to materiality was also relevant to whether petitioner believed that his statement was false. The trial court therefore properly

---

1. Respondent argues that habeas relief is unavailable under Ground Three because of petitioner's failure to contemporaneously object to the admission of the evidence pertaining to materiality. *See Breest v. Perrin*, 655 F.2d 1 (1st Cir.), *cert. denied*, 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 597 (1981). The Court's analysis of Ground Three assumes, without deciding, that the contemporaneous objection rule does not apply in the instant case.

admitted the challenged evidence, and the Court finds no constitutional error. *See United States v. Demopoulos*, 506 F.2d 1171, 1177 (7th Cir.1974), *cert. denied*, 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 673 (1975).

*Ground Four:* Petitioner herein claims that his Fifth and Fourteenth Amendment rights were violated when the prosecutor in closing argument charged for the first time that petitioner was involved in tax fraud. According to petitioner, these remarks were improper and prejudicial, denying him the right to a fair trial and due process. The Court does not agree.

In the instant case, petitioner was convicted of perjury for falsely identifying an individual, "William Smith", as the person responsible for signing a petition for ex parte attachment. William Smith was the trustee of the Forest Preservation Trust, a trust that was involved in certain real estate transactions in Carroll County in the mid 1970's. In its closing argument, the State remarked that this trust was a tax fraud which petitioner attempted to conceal by his perjury. According to petitioner: the tax fraud remarks accused him of a crime for which he was not indicted and for which there was no supporting evidence; the remarks contravened prior exclusionary rulings of the trial court; and the remarks constituted prosecutorial misconduct because the State knew or should have known that the remarks were untrue. After review of the record, the Court concludes that the State's remarks did not constitute an error of constitutional magnitude.

First, evidence introduced at trial could support an inference that petitioner had created the Forest Preservation Trust for the purpose of committing tax fraud. Specifically, Linda Clough, petitioner's secretary, testified that petitioner himself had signed the ex parte attachment as "William Smith", although petitioner insisted codefendant Thomas Tsoumas signed the subject document; the State's handwriting experts testified that Tsoumas's handwriting

did not match that of the fictitious William Smith; and income from the Forest Trust for the years 1974–1976 was not reported to the IRS until April 1977, when Tsoumas [2] filed fiduciary returns. Moreover, the Court concludes that the prosecution's remarks concerning tax fraud were not meant to charge petitioner with a separate crime, but rather were meant to establish a reason or motive for petitioner's perjury.

█ Second, the trial court issued an order prior to closing argument limiting the scope of the State's summation. The trial court barred any reference by the State to a "conspiracy" or "prior crimes". Petitioner's counsel contemporaneously objected to the State's tax fraud remarks based on the trial court's prior order. The trial court, however, overruled the objection, ruling that the argument did not violate its order. Even assuming that the trial court erred in permitting the State's tax fraud argument, "[e]rrors in state court evidentiary rulings generally do not provide grounds for relief in a federal habeas corpus proceeding". 16 Fed.Pro., L.Ed. § 41:200 (1983). The only exception to this rule is if the error is "of such magnitude as to deny the fundamental fairness which is the essence of due process". *Id.* Permitting the State to argue tax fraud did not deny petitioner a fundamentally fair trial in light of the supporting evidence introduced at trial; hence the trial court's ruling is an insufficient ground for habeas relief.

Similarly, the Court cannot find prosecutorial misconduct in the instant case. Fifty years ago, the United States Supreme Court admonished prosecutors "to refrain from improper methods calculated to produce a wrongful conviction…." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). The Court did, however, recognize that a prosecutor could pursue a conviction "with earnestness and vigor". *Id.* The delicate balance inherent in the role of a prosecutor was aptly described by the Court: "while he

---

**2.** In March 1977, one month prior to the filing of the income tax returns, petitioner disclosed

that Tsoumas was allegedly the fictitious "William Smith".

may strike hard blows, he is not at liberty to strike foul ones." *Id.*

According to petitioner, there was prosecutorial misconduct because the State knew or should have known that the tax fraud argument was untrue. In support of this argument, petitioner points to his testimony that the IRS conducted an audit in 1975 and accepted his tax return. However, petitioner did not present any documentary evidence at trial to support his claim, and the prosecutor testified that he did not learn of the audit until after the trial had been completed. Given these circumstances, the prosecutor's remarks in closing argument were not so egregious as to render the trial fundamentally unfair, *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974), and the Court rejects this ground for habeas relief.

*Ground Five:* Petitioner herein claims that his Fifth and Fourteenth Amendment rights were violated because his conviction was obtained upon insufficient evidence to prove every element of perjury beyond a reasonable doubt. The Court does not agree.

■ Claims alleging the insufficiency of evidence to support convictions in habeas corpus proceedings are governed by the standard articulated by the United States Supreme Court in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). According to *Jackson,* the Court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 319, 99 S.Ct. at 2789. Reviewing the record, the Court concludes that this query must be answered affirmatively.

■ Petitioner's secretary, Linda Clough, testified that she prepared the ex parte attachment and that petitioner signed it. Contrary to petitioner's assertions that codefendant Tsoumas had signed the ex parte attachment, the State's handwriting expert did not believe that codefendant Tsoumas was the signatory of the ex parte attachment. Moreover, petitioner had exhibited a reticence to divulge the identity of William Smith, and petitioner's interest as the attorney who created the Forest Preservation Trust was closely aligned with the fictitious William Smith. A rational trier of fact could have considered this evidence and found the essential elements of perjury beyond a reasonable doubt. The Court accordingly rejects this ground for habeas relief.

*Ground Six:* Petitioner herein claims that his sentence was excessive and disproportionate in violation of his due process and equal protection rights under the Fourteenth Amendment, and his Eighth Amendment right to be free from cruel and unusual punishment. The Court does not agree.

Convicted on the two counts of perjury, RSA 641:1, petitioner was sentenced to a period of incarceration on Count One of not more than five nor less than two years, with fifteen months of that sentence suspended. Petitioner was also fined two thousand dollars and ordered to perform five hundred hours of public service. On Count Two, petitioner was sentenced to a period of incarceration of one year, which was suspended, and was fined two thousand dollars. Commission of perjury is a class B felony, and therefore is subject to a maximum period of incarceration of seven years on each count, RSA 651:2 II(b), and a fine of two thousand dollars on each count, RSA 651:2 IV(a).

■ Pursuant to 28 U.S.C. § 2254(a), the Court may entertain an application for a writ of habeas corpus only on the ground that petitioner is in custody in violation of his constitutional rights. Petitioner's contention that his sentence was so severe and disproportionate as to deny him equal protection and due process as well as to constitute cruel and unusual punishment does not meet this standard. The sentence was within the range presented by statute and does not deprive petitioner of any constitutional rights. The severity of a sentence is not sufficient ground for habeas relief. *Willeford v. Estelle,* 538 F.2d 1194, 1196 (5th Cir.1976); *United States Ex rel. Gardner v. Meyer,* 519 F.Supp. 75, 81 (N.D.Ill.

1981); 16 Fed.Pro., L.Ed. § 41:207 (1983). *See also Rummel v. Estelle,* 445 U.S. 263, 272, 100 S.Ct. 1133, 1138, 63 L.Ed.2d 382 (1980). The Court accordingly rejects this ground for habeas relief.

*Ground Seven:* Petitioner herein claims that the Superior Court Sentence Review Division failed to follow its own Rules 20 and 22 in reviewing his sentence, thus violating his Fifth and Fourteenth Amendment rights. These rules require that the Division evaluate certain factors in reviewing a sentence of incarceration to determine whether the sentence is excessive or disproportionate. Sentence Review Division Rule 20 states:

> The decision of the Sentence Review Division will be final and the reasons for any change of sentence will be stated therein in a written opinion. In its decision, the Sentence Review Division will give consideration, but is not limited to, the following objectives of the New Hampshire Criminal Code sanctions:
>
> (a) Isolation of the offender from society to prevent criminal conduct during the period of confinement;
>
> (b) Rehabilitation of the convicted offender into a non-criminal member of society;
>
> (c) Deterrence of other members of the community who might have tendencies toward criminal conduct similar to those of the offender;
>
> (d) Deterrence of the defendant himself;
>
> (e) Reaffirmation of social norms for the purpose of maintaining respect for the norms themselves;
>
> (f) The individual characteristics of the defendant prior to the imposition of the sentence, except that information, which does not affirmatively appear on the record or in the judge's statement of reasons for the sentence, shall be excluded;
>
> (g) The facts and circumstances of the crime or crimes which affirmatively appear in the record of the proceedings; and
>
> (h) Statistical information concerning the sentences imposed for the same crime committed by other individuals in the State of New Hampshire.

The relevant portion of Sentence Review Division Rule 22 states:

> The scope of review of the Division shall be:
>
> (a) The excessiveness or lightness of the sentence having regard to the nature of the offense, the protection of the public interest and safety, and the character of the offender.

According to petitioner, had the Division considered the evidence presented at the sentence review hearing, the Division could only have concluded that incarceration of petitioner was inappropriate in light of Rules 20 and 22. Because the Division approved the sentence of incarceration, petitioner argues he was not treated on an equal basis with persons of similar background who have been convicted of perjury in New Hampshire. The Court does not agree.

■ Under 28 U.S.C. § 2254, the Court will only entertain an application for writ of habeas corpus where a petitioner is in custody in violation of the Constitution or laws or treaties of the United States. Upon review of the record, the Court cannot discern any such violation. First, the Court in reviewing the decision of the Sentence Review Division will defer to that body's decision absent constitutional error therein. The Court will not cavalierly substitute its appraisal of petitioner's sentence for that of the Review Division. Second, and more importantly, there is nothing in the record to support petitioner's contention that the Division ignored its own procedural rules. While petitioner presented statistical evidence indicating that similarly situated individuals convicted of perjury did not receive sentences of incarceration in New Hampshire, such evidence was not binding on the Division. Rule 20 provides at a minimum eight criteria by which the Division is to evaluate a sentence. Indeed, of the enumerated eight, the Division could well have considered deterrence, Rule 20(c), and reaffirmation of social norms, Rule 20(e), as grounds for approving petitioner's

sentence of incarceration. Moreover, the Division was not limited to the eight criteria in evaluating the sentence. Accordingly, the Court finds that the Sentence Review Division did not violate its procedural rules in derogation of petitioner's constitutional rights, and the Court rejects this ground for habeas relief.

*Ground Eight:* Petitioner herein claims that his conviction was obtained by the unconstitutional failure of the prosecution to timely disclose exculpatory evidence. The Court turns first to the question of whether petitioner exhausted his state court remedies with respect to this claim and concludes that he has so exhausted.

▉▉▉ In *Anderson v. Harless,* 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982), the Supreme Court ruled that a federal habeas petitioner must provide the state courts with a "fair opportunity" to apply controlling legal principles to the facts bearing upon his constitutional claim. The Supreme Court noted that it was not sufficient merely to present all the facts to the state court, but instead required the petitioner to have "fairly presented" the "substance" of his federal habeas corpus claim to the state court in order to effect exhaustion of the state remedy. *Id.* at 6, 103 S.Ct. at 277. Respondent herein argues that this particular claim was not exhausted because it was not highlighted in petitioner's original appellate brief to the New Hampshire Supreme Court. While it is true that the claim that the prosecution failed to disclose exculpatory evidence was not a highlighted issue in petitioner's brief, this fact is not dispositive of the exhaustion issue. Petitioner in his brief presented the facts underlying this constitutional claim, *see* Sands Brief, pp. 33–34, and referenced the leading case on the unconstitutionality of the prosecution's suppression of exculpatory evidence, *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Court finds, accordingly, that the substance of petitioner's claim was fairly presented to the New Hampshire Supreme Court and petitioner thus exhausted his state remedies with respect to this claim. The fact that the New Hampshire Supreme Court did not address this issue in its opin-

ion does not alter the Court's finding, since exhaustion does not require that an issue be addressed in a decision where the substance of the claim has been fairly presented to the state court. *Smith v. Digmon,* 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978); *Williams v. Holbrook,* 691 F.2d 3 (1st Cir.1982).

Turning to the merits of this claim, petitioner argues that the prosecution failed to disclose an instruction sheet prepared by petitioner for his secretary, Linda Clough, to be used in preparing a Writ of Summons. The Writ of Summons was to be filed with the subject petition for ex parte attachment. Petitioner testified that he typed the petition for ex parte attachment which was subsequently signed "William Smith" by codefendant Tsoumas while Linda Clough testified that she typed the petition for ex parte attachment and petitioner herein signed it "William Smith". According to petitioner, the instruction sheet is exculpatory because it contained monetary figures to be used in the Writ of Summons which differed from those contained in the petition for ex parte attachment. This discrepancy, petitioner argues, supports his contention that he typed the petition for ex parte attachment, while his secretary typed only the writ of summons.

▉▉ The United States Supreme Court in *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), opined that

> the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

*See, e.g., Moore v. Illinois,* 408 U.S. 786, 794–95, 92 S.Ct. 2562, 2567–68, 33 L.Ed.2d 706 (1972). Such prosecutorial misdeed will warrant reversal of conviction only where the failure to disclose impugns the fundamental fairness of the trial, *United States v. Kepreos,* 759 F.2d 961, 967 (1st Cir.1985), and results in undue prejudice. *United States v. Drougas,* 748 F.2d 8, 23 (1st Cir.1984).

**1560**

■ In the instant action, the Court finds that nondisclosure of the instruction sheet prior to trial did not unduly prejudice petitioner or deny him a fundamentally fair trial. The instruction sheet pertained only to the Writ of Summons, not to the petition for ex parte attachment, and the discrepancy in figures between the two documents does not prove that petitioner, rather than Linda Clough, typed the petition for ex parte attachment. The variation between the two documents does not prove that two people, rather than one, typed the documents; hence the instruction sheet cannot be considered exculpatory. In any event, even assuming that the instruction sheet was exculpatory, it was made available to petitioner at an early stage of the trial (the prosecution had just called its third witness), and petitioner therefore had use of the sheet for cross-examination of Linda Clough or for any other allowable purpose. Access to the document at the early stage of trial therefore negated any undue prejudice to petitioner. The Court accordingly cannot find a violation of the rule enunciated in *Brady v. Maryland, supra,* and therefore rejects this ground for habeas relief.

*Ground Nine:* Petitioner herein claims that his conviction was obtained after trial upon indictments which were unconstitutionally vague and uncertain. The Court does not agree.

■ The sufficiency of a state court indictment is generally not open to inquiry in a habeas corpus proceeding. *Howard v. Flemming,* 191 U.S. 126, 24 S.Ct. 49, 48 L.Ed. 121 (1903); *Kohl v. Lehlback,* 160 U.S. 293, 16 S.Ct. 304, 40 L.Ed. 432 (1895). However, as recognized by this Court, where a state court indictment is so defective as to deprive the trial court of jurisdiction, habeas corpus relief is available. *Dukette v. Perrin,* 564 F.Supp. 1530, 1532 n. 2 (D.N.H.1983) (citations omitted). The sufficiency of the state court indictment depends upon whether "it gives the defendant enough information so that he can prepare for trial". *State v. Taylor,* 121 N.H. 489, 495, 431 A.2d 775 (1981), *quoting State v. Meloon,* 119 N.H. 76, 77, 397 A.2d

1041 (1979). The Court finds petitioner's indictment sufficient under this standard.

Petitioner's first indictment read as follows:

[T]hat David S. Sands [on March 7, 1977] did, during a hearing on Pending Motions in the Superior Court held at Ossipee, knowingly make a false material statement under oath, in response to questions asked, to wit:

*Question:* And who signed William Smith's name there?

*Answer:* Thomas Tsoumas.

*Question:* And did he sign this in your presence?

*Answer:* In one instance he did. In the other instance he handed it to me and said he had signed it. He acknowledged . . .

when in fact defendant did not believe these statements to be true, and in fact said statements were false.

Petitioner's second indictment read as follows:

[T]hat David Sands [on April 27, 1977] did, during a hearing on motions in the Superior Court held at Ossipee, knowingly make a false material statement under oath, in a direct statement of witness, to wit: 'Well, as it turned out, Tom came up that night. I had him sign the Petition for Ex Parte Attachment, but apparently I did not sign all of the copies,' when in fact defendant did not believe this statement to be true, and in fact said statement was false.

Under New Hampshire law a person is guilty of perjury, RSA 641:1 "if in any official proceeding, he makes a false material statement under oath or affirmation, or swears or affirms the truth of a material statement previously made, and he does not believe the statement to be true."

In the instant action, petitioner's indictments closely track the language of the statute in question, specify the time and official proceeding at which the alleged perjurious statements were made, and detail the content of the statements themselves. The indictments are not unconstitutionally vague and uncertain, as they provided enough information for petitioner to ade-

quately prepare for trial. The Court accordingly rejects this ground for habeas relief.

*Ground Ten:* Petitioner herein claims that his conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure in violation of his Fourth Amendment rights. Specifically, petitioner argues that certain documents such as a bank signature card and withdrawal slips obtained from his codefendant in the underlying civil litigation were subsequently unconstitutionally seized. Those documents were used at trial for the purpose of handwriting analysis. Petitioner, along with his codefendant, unsuccessfully moved to suppress these documents at the outset of the trial and unsuccessfully sought reversal of his conviction before the New Hampshire Supreme Court on the same ground. *State v. Sands, supra,* 123 N.H. at 607–08, 467 A.2d 202.

The mandate of *Stone v. Powell,* 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976), bars federal habeas corpus relief where the grounds alleged urge that evidence obtained in an unconstitutional search or seizure was introduced at the petitioner's trial in those instances "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim." If both the state trial court and the state appellate court addressed the petitioner's Fourth Amendment claim, the petitioner has indeed been afforded the full and fair review required under *Stone v. Powell. Maxwell v. Mabry,* 672 F.2d 683 (8th Cir.1982). It has been further held that *Stone v. Powell* does not focus upon the potential for error in state court proceedings, but emphasizes the integrity of such proceedings, assuming that state courts will be as diligent as federal courts in protecting Fourth Amendment rights. *Palmigiano v. Houle,* 618 F.2d 877, 882 (1st Cir.1980), *cert. denied,* 449 U.S. 901, 101 S.Ct. 272, 66 L.Ed.2d 132 (1980).

■ The Court finds that petitioner was afforded a full and fair review of his

Fourth Amendment claim by the State. Not only did petitioner litigate this issue at the outset of trial, but he also argued it on appeal to the New Hampshire Supreme Court. The mandate of *Stone v. Powell* therefore precludes this ground for habeas relief.

■ *Ground Eleven:* Petitioner herein claims that his conviction was obtained by use of tainted evidence obtained in violation of his constitutional rights, including his right to privacy and to be free from deprivation of property without due process of law. Petitioner specifically complains about the documentary evidence (bank withdrawal slips and bank signature card) obtained from his codefendant Tsoumas during Tsoumas's deposition taken in the underlying civil litigation. According to petitioner, this evidence was obtained as a result of deception and subterfuge between law enforcement officials acting in concert with private attorneys in that underlying civil litigation. Assuming, without deciding, that petitioner has standing to raise this issue, the Court, after review of the record, concludes that the evidence complained of was not obtained in violation of petitioner's constitutional rights.

The record reveals that the documentary evidence was obtained from Tsoumas by the private attorneys in the underlying civil litigation in order to identify and locate "William Smith", the defendant in the civil litigation. This action was consistent with the private attorneys' obligation to pursue their clients' best interests. Moreover, the record fails to reveal any collusion between the State and these private attorneys. There is no evidence that the State encouraged or promoted the discovery of the documentary evidence in question. In addition, the Court cannot discern any violation of petitioner's right to privacy by the disclosure of these banking documents where they related to the critical issue of identification in the underlying civil litigation. The Court thus rejects this ground for habeas relief.[3]

---

3. The Court also notes that to the extent petitioner raises a Fourth Amendment claim in

Ground Eleven, the rule in *Stone v. Powell,*

*Ground Twelve:* Petitioner herein claims that his conviction was obtained by the use of improper and irrelevant evidence and by the exclusion of certain relevant evidence sought to be admitted by petitioner. According to petitioner, these erroneous evidentiary rulings by the trial court violated his due process rights and his right to a fair trial. The Court does not agree.

The standard to be employed in a habeas proceeding by this Court in reviewing alleged errors in evidentiary rulings by the trial court was explained by the First Circuit Court of Appeals in *Allen v. Snow,* 635 F.2d 12, 15 (1st Cir.1980):

> The writ of habeas corpus ordinarily will not lie solely to correct alleged errors in evidentiary rulings. *Lisenba v. California,* 1941, 314 U.S. 219, 228, 62 S.Ct. 280, 286, 86 L.Ed. 1222; *Salemme v. Ristaino,* 1 Cir., 1978, 587 F.2d 81, 85. To rise to constitutional magnitude, such an error must 'so infuse the trial with inflammatory prejudice as to render a fair trial impossible.' *Salemme v. Ristaino, ante,* 587 F.2d at 86.

*See, e.g., United States v. Agurs,* 427 U.S. 97, 108, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976).

Petitioner complains about the admission of: banking documents taken at the Tsoumas deposition; evidence regarding the dates of execution of certain documents (a handwritten agreement between petitioner and Tsoumas, a promissory note from petitioner to Tsoumas, and a schedule of beneficial interests); and evidence regarding petitioner's legal strategy in the underlying civil litigation. Petitioner also complains that the trial court improperly limited cross-examination of County Attorney Frederick Cox, a witness at trial, while permitting the State to cross-examine a defense witness, a friend of codefendant Tsoumas, without limitation.

█ The Court finds that these evidentiary rulings were not erroneous, and that even if they were, they did not "so infuse the trial with inflammatory prejudice as to render a fair trial impossible." *Allen v. Snow, supra.* The Tsoumas banking documents including withdrawal slips and signature card were relevant for purposes of handwriting comparisons and the establishment of "William Smith's" identity. Their probative value outweighed their prejudice. The evidence regarding the agreement between petitioner and Tsoumas dated January 11, 1975, the promissory note from Tsoumas to petitioner, dated February 15, 1974, and a schedule of beneficial interests dated February 15, 1974, was more probative than prejudicial. Specifically, an FBI expert testified that these documents had all been prepared at the same time, supporting the inference that petitioner was "William Smith" and that Tsoumas and petitioner had attempted to cover up this fact. Similarly, petitioner's legal strategy in the underlying civil action included a prolonged refusal to disclose the identity of "William Smith" and an exception to testifying. This strategy supported the inference that petitioner was concealing the identity of "William Smith", and its probative value outweighed any prejudicial effect.

█ The trial court's rulings with respect to cross-examination were not so prejudicial as to render petitioner's trial fundamentally unfair. Petitioner sought to cross-examine County Attorney Cox regarding his previous prosecutorial decisions in actions related to the underlying civil litigation. The trial court, however, limited petitioner's inquiry of County Attorney Cox to matters concerning the underlying civil litigation at the time of petitioner's alleged perjury. The scope of petitioner's desired cross-examination was overly broad, touching on irrelevant, tangential, and misleading matters, and thus was properly limited. Similarly, the Court can find no error in the trial court's decision to permit the State to cross-examine a friend of codefendant Tsoumas regarding his failure to inform law enforcement officials that he possessed exculpatory evidence. The State's cross-examination of this witness attempted to discredit him by questioning his credibility and raising the inference that his testimony was fabricated.

*supra,* 428 U.S. 465, 96 S.Ct. 3037, precludes habeas relief.

Such cross-examination was proper and cannot be considered prejudicial to the extent of denying petitioner a fair trial.

In reviewing the trial court's evidentiary rulings, individually and as a whole, the Court cannot discern any errors of constitutional dimension sufficient to warrant relief under 28 U.S.C. § 2254. This ground for habeas relief is accordingly rejected.

*Ground Thirteen:* Petitioner herein claims that his conviction was obtained after the jury had been improperly instructed by the trial court. Petitioner specifically complains that his due process rights were violated where the trial court instructed the jury that the state did not have to prove that the defendants believed their statements to be false. According to petitioner, this instruction improperly removed the element of *mens rea* from the jury.

 In general, improper jury instructions will not form the basis of federal habeas corpus relief. *Niziolek v. Ashe*, 694 F.2d 282, 290 (1st Cir.1982), *citing Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). A federal court can only overturn a state conviction based on improper jury instructions where the instructions "so infected the entire trial that the resulting conviction violates due process." *Id.* at 147, 94 S.Ct. at 400. The Supreme Court in *Cupp v. Naughten* outlined the role of a federal court in reviewing a state jury instruction:

> [I]t must be established not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.

*Id.* at 146, 94 S.Ct. at 400. Where the overall charge is fundamentally sound, a petitioner's due process rights are not violated, even though certain portions of the charge to the jury may be flawed. *Grace v. Butterworth*, 635 F.2d 1, 6 (1st Cir.1980), *cert. denied*, 452 U.S. 917, 101 S.Ct. 3053, 69 L.Ed.2d 421 (1981); *McInerney v. Berman*, 621 F.2d 20, 25 (1st Cir.1980), *cert. denied*, 449 U.S. 867, 101 S.Ct. 201, 66 L.Ed.2d 85 (1980).

██ In support of his contention that the trial court erred in instructing the jury that the State did not have to prove that defendants knew or believed that the alleged perjurious statements were false, petitioner references RSA 641:1, which provides that a person is guilty of perjury if he makes a false material statement in an official proceeding and "he does not believe the statement to be true." Thus, according to petitioner, under RSA 641:1, proof that a person does not believe a statement to be true is equivalent to proof that a person believes a statement to be false. This construction fails to account for those occasions when a person does not know if a statement is true; i.e., he is confused or unsure of himself, while not really knowing if a statement is false. The perjury statute is only concerned with those instances where a person does not believe a statement to be true. The trial court instructed the jury in accordance with the statutory language that the State was required to prove beyond a reasonable doubt that the defendants did not believe the questioned statements to be true. The Court finds, therefore, that the overall charge was fundamentally sound and did not violate petitioner's due process rights, and the Court accordingly rejects this ground for habeas relief.

*Ground Fourteen:* Petitioner herein claims that the trial court improperly failed to instruct the jury that the evidence presented must not only be consistent with the defendant's guilt, but must exclude every reasonable hypothesis of his innocence. Petitioner also contends that the trial court failed to instruct the jury properly under the principles of conflicting statements and witnesses, and was in error for emphasizing a particular indictment against codefendant Tsoumas and then failing to inform the jury that the indictment had been withdrawn. Petitioner also contends that the trial court improperly instructed the jury that they could make their own comparison of handwriting specimens separate from the handwriting expert's reports.

As discussed above, the Court will only grant habeas relief where a state jury in-

struction "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten, supra,* 414 U.S. at 146, 94 S.Ct. at 400. The challenged jury instructions herein or lack thereof do not meet this standard.

■ The trial court's charge with respect to the inferences allowable from the presented evidence did not abridge petitioner's rights to due process. The trial court instructed:

> The defendant is entitled to every inference in his favor which can be reasonably drawn from the evidence; and that being the case, where two inferences may be drawn from the same fact, one consistent with guilty and one consistent with innocence, if you were to so conclude, that's entirely within your role, judgment and decision, after weighing the evidence on any given issue, then and in such an event the defendant would be entitled to the inference which would be consistent with innocence.

This charge was fair, and the trial court thus was not obligated to instruct the jury that the evidence must exclude every reasonable hypothesis of innocence.

■ Similarly, the trial court's charge with respect to the principles relating to conflicting statements of witnesses did not so infect petitioner's trial as to abridge his due process rights. The trial court charged the jury that they were responsible for weighing the testimony of all the witnesses by considering their honesty, demeanor, intelligence, motives, bias, and interest. The jury was also instructed that they were free to accept or reject, in whole or in part, the testimony of any witness. The Court finds such charge consistent with the principles governing conflicts in witnesses' statements.

■ The trial court's decision not to inform the jury that a particular indictment against petitioner's codefendant Tsoumas had been withdrawn did not violate petitioner's right to due process. The indictment which had been read to the jury involved Tsoumas's claim to have signed a promissory note dated February 15, 1974. Had the trial court informed the jury during deliberations that this indictment had been withdrawn, the possibility existed that the jury would infer that the State was removing its weakest case and permitting them to decide the strongest cases against Tsoumas and petitioner. The possible prejudice to petitioner in such a case is apparent, and the trial court's decision not to inform the jury of the *nolle prosequi* was not an error of constitutional magnitude.

■ The trial court's instruction that the jury was free to make its own comparisons of handwriting samples did not so infect petitioner's trial as to deny him his due process rights, and in fact is in accord with established law regarding evaluation of handwriting samples. A jury is permitted to conduct its own handwriting comparison independently of the testimony and reports of handwriting experts. *Strauss v. United States,* 311 F.2d 926 (5th Cir.1963), *cert. denied,* 373 U.S. 910, 83 S.Ct. 1299, 10 L.Ed.2d 412 (1963); *Goins v. United States,* 99 F.2d 147, 151 (4th Cir.1938); *University of Illinois v. Spalding,* 71 N.H. 163, 172, 51 A. 731 (1901). According to the court in *Strauss v. United States, supra,* 311 F.2d at 932:

> It is elementary, putting aside the expert testimony of genuineness ... that the jury was entitled to draw their own conclusion as to the genuineness of the signature by a comparison with the admitted signature of appellant....

*See also Hickory v. United States,* 151 U.S. 303, 306, 14 S.Ct. 334, 335, 38 L.Ed. 170 (1894) ("the comparison may be made by witnesses or without the intervention at all, by the jury themselves"). The Court accordingly rejects the challenges to the trial court's instructions or lack thereof as a basis for habeas relief.

*Ground Fifteen:* Petitioner herein claims that his conviction was obtained by actions of grand and petit juries which were unconstitutionally impaneled and were not representative of a fair cross section of the community in violation of his Sixth Amendment rights. The Court finds this claim to be without merit.

■ Assuming without deciding that this claim is not barred by the contemporaneous objection rule, *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) ("when a procedural default bars state litigation of a constitutional claim, a state prisoner may not obtain federal habeas relief absent a showing of cause and actual prejudice"), *Breest v. Perrin,* 655 F.2d 1 (1st Cir.), *cert. denied,* 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 597 (1981), the Court finds that petitioner has failed to establish a prima facie violation of the Sixth Amendment jury requirement of a fair cross section of the community. Petitioner specifically complains about the underrepresentation of lower income people, recent residents, nonhomeowners, women, and young people aged eighteen to thirty-four years of age on his Belknap County grand and petit juries in 1978.

■ The United States Supreme Court in *Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579 (1979), outlined the requirements for establishing a prima facie violation of the fair cross section requirement. The defendant, petitioner herein, must show

(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

With respect to the first prong of this test, petitioner fails to offer, nor can the Court find any support for, his contention that lower income people, recent residents, and nonhomeowners are sufficiently unique to constitute "distinctive" groups for Sixth Amendment purposes.[4] In addition, while the First Circuit Court of Appeals had previously held that young people (aged 18–34) were sufficiently unique to constitute a

"distinctive" group for Sixth Amendment purposes, *LaRoche v. Perrin,* 718 F.2d 500 (1st Cir.1983); *United States v. Butera,* 420 F.2d 564 (1st Cir.1970), this position was reconsidered and overturned by the Circuit in *Barber v. Ponte,* 772 F.2d 982 (1st Cir.1985). Thus, in petitioner's claim, the Court finds only one challenged group, women, sufficiently distinct to satisfy the first prong in establishing a prima facie violation of the fair cross section requirement of the Sixth Amendment. *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).

Indicted and tried by grand and petit juries in Belknap County in 1978, petitioner attempts to show that women were unfairly and systematically underrepresented in the jury selection process by reference to statistics pertaining to a 1973 Belknap County jury venire contained in *State v. Fleury,* 114 N.H. 325, 321 A.2d 108 (1974). Petitioner fails to present any evidence pertaining to the composition of the grand and petit juries which indicted and tried him, nor does he present any evidence pertaining to the 1978 master list of jurors for Belknap County from which his juries were drawn. Without even such minimal evidence, the Court finds that petitioner has failed to show that women were unfairly and systematically excluded from his juries in violation of the Sixth Amendment. Reliance on five-year-old statistics is simply inadequate. The Court accordingly rejects this ground for habeas relief.

*Ground Sixteen:* Petitioner herein claims that his rights to due process were violated when the trial court and the New Hampshire Supreme Court failed to consider the challenge to the composition of his grand and petit juries because of New Hampshire's contemporaneous objection rule. According to petitioner, there was sufficient "cause and prejudice" to render the contemporaneous objection rule inappli-

---

**4.** In order to constitute a "distinctive" group for Sixth Amendment purposes, the group (1) must be defined and limited by some clearly identifiable factor (e.g., sex or race), (2) must have a basic similarity in attitude, ideas, or experience, and (3) must have a community of interest

among its members such that the group's interest would not be represented if the group were excluded from the jury selection process. *See Willis v. Zant,* 720 F.2d 1212, 1216 (11th Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 3546, 82 L.Ed.2d 849 (1984).

cable. *Wainwright v. Sykes, supra,* 433 U.S. 72, 97 S.Ct. 2497. The question presented for resolution by the Court herein is whether the state courts committed an error of constitutional magnitude in applying the contemporaneous objection rule. The Court can find no such error.

■■■ Principles of comity and federalism prevent federal courts from granting habeas corpus relief to a state prisoner whose claim was denied review by the state courts because of a procedural default, absent a showing of both cause for the default and resulting prejudice. *Reed v. Ross,* —— U.S. ——, 104 S.Ct. 2901, 2908, 82 L.Ed.2d 1 (1984); *Engle v. Isaac,* 456 U.S. 107, 129, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes, supra,* 433 U.S. 72, 97 S.Ct. 2497. The state courts found that there was no cause for petitioner's failure to raise the challenge to the composition of his grand and petit juries and rejected petitioner's contention that New Hampshire's contemporaneous objection rule was inapplicable. This Court concurs in the state court's finding.

■■■ Petitioner contends that it would have been futile to challenge his grand and petit juries at trial because the law at that time required that a purposeful exclusion of a distinctive group be shown, *State v. Thomson,* 109 N.H. 205, 210, 247 A.2d 179 (1968); *State v. Fleury,* 114 N.H. 325, 333, 321 A.2d 108 (1974), and that it was not until after his trial that the United States Supreme Court in *Duren v. Missouri, supra,* 439 U.S. 357, 99 S.Ct. 664, held that only systematic exclusion of a distinctive group need be shown in making out a prima facie Sixth Amendment violation. Petitioner's argument fails, however, to recognize that the Supreme Court prior to his trial ruled that systematic exclusion of a distinctive group was required in a Sixth Amendment jury challenge in *Taylor v. Louisiana, supra,* 419 U.S. at 531–33, 95 S.Ct. at 698–99. Petitioner does not show cause for his failure to contemporaneously object where there is only perceived futility in such objection. *See Engle v. Isaac, supra,* 456 U.S. at 130 n. 36, 102 S.Ct. at 1573 n. 36; *Wainwright v. Sykes, supra.* In addition, assuming *arguendo* that there is

cause for the failure to contemporaneously object in the instant case, the Court cannot find any prejudice resulting from the procedural default. As noted in the discussion of Ground Fifteen, there is no merit to petitioner's contention that his grand and petit juries were constitutionally infirm.

Finding application of the New Hampshire contemporaneous objection rule proper by the state courts, the Court accordingly rejects this ground for habeas relief.

*Ground Seventeen:* Petitioner herein claims that the twenty-nine-month delay between oral argument and the rendering of the New Hampshire Supreme Court's decision on appeal violated his right to a speedy trial under the Sixth Amendment, to due process and fundamental fairness under the Fifth and Fourteenth Amendments, and to be free from cruel and unusual punishment under the Eighth Amendment. The Court does not agree.

■■■ Contrary to petitioner's contention, the Court finds that the Sixth Amendment right to speedy trial is inapplicable to his state appellate proceeding. The purpose of the constitutional guarantee of speedy trial is (1) to prevent undue and oppressive incarceration prior to trial, (2) to minimize anxiety and concern accompanying public accusation, and (3) to limit possibilities that long delay will impair the accused's ability to defend himself. *Smith v. Hooey,* 393 U.S. 374, 378, 89 S.Ct. 575, 577, 21 L.Ed.2d 607 (1969); *United States v. Ewell,* 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966). The Sixth Amendment was adopted to assure that one accused of a crime is promptly brought to trial. *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The purposes of the Sixth Amendment, however, do not apply in the context of an appellate proceeding where the accused has already been convicted of an offense. *See United States v. Alston,* 412 A.2d 351, 356–57 (D.C.1980); *State ex rel. Jones v. Court of Common Pleas,* 55 Ohio St.2d 130, 9 O.O.3d 108, 378 N.E.2d 471, 472 (1978); *State v. Cooper,* 52 Ohio St.2d 163, 6 O.O.3d 377, 370 N.E.2d 725, 737 (1977), *vacated in part,* 438 U.S.

911, 98 S.Ct. 3137, 57 L.Ed.2d 1157 (1978). *See also Harrison v. United States*, 392 U.S. 219, 221 n. 4, 88 S.Ct. 2008, 2009 n. 4, 20 L.Ed.2d 1047 (1968) (petitioner's contention that his right to speedy trial was violated found to be wholly without merit where "[v]irtually all of the delays of which the petitioner complains occurred in the course of appellate proceedings and resulted either from the actions of petitioner or from the need to assure careful review of an unusually complex case"). Accordingly, in the instant case where petitioner had already been convicted of perjury, the delay in the state appellate process, for whatever reason, is not violative of any Sixth Amendment right.

■ Turning to petitioner's claim that the state appellate delay violated his due process rights, the Court must consider whether such delay was so prejudicial as to violate all notions of fundamental fairness. *See Marion v. United States*, 404 U.S. 307, 325–26, 92 S.Ct. 455, 465–66, 30 L.Ed.2d 468 (1971) (preindictment delay implicating due process). The Court cannot discern such prejudice in the instant case. The delay by the New Hampshire Supreme Court in rendering its decision did not jeopardize the fairness of a possible retrial. In addition, petitioner's personal woes and anxieties resulting from conviction and appeal are not sufficient to implicate the right of due process. *See United States v. Alston, supra*, 412 A.2d at 362. Moreover, the delay in the instant case, in large part, was attributable to the death of two justices assigned to the case as well as to the complexity of the legal issues presented for resolution. Considering these two factors, the Court cannot find a delay sufficiently prejudicial to violate petitioner's constitutional right.

■ Petitioner's claim that the state appellate delay constituted cruel and unusual punishment is also without merit. The delay did not violate the Fifth Amendment right to due process, nor did it violate the Sixth Amendment right to a speedy trial. The delay, in and of itself, is not so unusual, does not involve excessive physical suffering, and is not so repugnant to civilized people as to implicate the Eighth Amendment right to be free from cruel and unusual punishment. *See Furman v. Georgia*, 408 U.S. 238, 330–31, 92 S.Ct. 2726, 2772–73, 33 L.Ed.2d 346 (1972). The Court accordingly rejects this ground for habeas relief.

### Conclusion

The Court concludes that there were no constitutional infirmities in obtaining petitioner's conviction, the sentence imposed upon him, the sentence review by the Superior Court Sentence Review Division, and the state appellate process. The petition for habeas corpus is herewith denied.

SO ORDERED.